UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| PETER OROMO, | 5:26-CV-05007-RAL |
| Petitioner, | |
| vs. | ORDER DENYING PETITIONER'S MOTIONS FOR TEMPORARY RESTRAINING ORDERS AND TO STAY AND DISMISSING PETITION WITHOUT PREJUDICE |
| SAMUEL J. OLSON, FIELD OFFICE DIRECTOR; TODD LYONS, ACTING DIRECTOR OF ICE; KRISTI NOEM, DHS SECRETARY; PAM BONDI, AG; AND SHERIFF OF LAWRENCE COUNTY JAIL, | |
| Respondents. | |

On January 26, 2026, Petitioner, Peter Oromo, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 against Respondents Pamela Bondi, Kristi Noem, Todd Lyons, Samuel J. Olson, and the Lawrence County Sheriff (Respondents), alleging that he is being unlawfully detained by Immigration and Customs Enforcement (ICE). Doc. 1. Oromo, on January 29, filed a pro se motion for a temporary restraining order (TRO). Doc. 6. Judge Karen E. Schreier[1] appointed counsel[2] for Oromo, who promptly filed a Memorandum in Support of a TRO (1) to prohibit Oromo's removal from the Western Division of the District of South Dakota pending resolution of his underlying habeas action, (2) to order Respondents to produce all

---

[1] Judge Schreier reassigned this case to the undersigned on February 17, 2026, due to her trial and travel schedule. Doc. 25.

[2] James Leach accepted the appointment and, as he has done throughout his career, provided timely, high quality, and zealous representation to his client. Doc. 7.

immigration-related documents pertaining to Oromo that are within their possession, custody, or control; (3) that Oromo be released; and (4) such other and future relief the Court deemed just. Doc. 8. Judge Schreier granted in part Oromo's motion for a TRO on February 6, 2026, and ordered that Oromo may not be removed or transferred from the Western Division of South Dakota. Doc. 11. That same day, Oromo through counsel filed another motion for a TRO seeking to enjoin Respondents from moving his custody outside of the Western Division of the District of South Dakota and to stay or continue a decision on the merits in this case in light of a January 30, 2026, immigration judge order reopening Oromo's removal proceedings. Docs. 12, 13, 13-1. Respondents oppose that second TRO motion and ask that this Court vacate the first TRO, deny Oromo's request for a stay, and dismiss the petition. Doc. 22 at 2. Both parties filed additional pleadings yesterday, February 19, 2026, including Oromo's counsel filing a Motion to Extend Temporary Restraining Order until March 6, 2026, Doc. 27. See Docs. 28, 29, 30, 31, 32.

## I.    Facts Inferred from Filings

This Court is not making factual findings but infers from the parties' filings the following facts. Many of the matters filed are records of which this Court could take judicial notice, and the filings and briefing do not frame a disputed fact material to the issues now before this Court.

Oromo was born in South Sudan in 1983. Doc. 8 at 1. As a child, he and his family fled the civil war in that country and sought refuge in Kenya. Id. On June 16, 1997, Oromo was lawfully admitted to the United States as a refugee. Id.; Doc. 22 at 3. In 2004, following a grand theft conviction, he was ordered removed from the United States. Doc. 8 at 1; Doc. 22 at 4. The record is silent on what occurred between 2004 and 2019 in Oromo's life.

In 2019, Oromo was granted statutory withholding of removal. Doc. 22 at 4. In 2021, Oromo was convicted in South Dakota state court of the following offenses: 1) unauthorized

ingestion of controlled drug/habitual offender, receiving a sentence of 7 years suspended upon serving 180 days and 3 years of probation, Doc. 24 at 15–16; 2) simple assault-physical menace/domestic, receiving a 180-day sentence with 90 days suspended, id. at 9–10; and 3) aggravated assault-dangerous weapon, receiving a sentence of 3 years suspended upon serving 180 days and 3 years of probation, id. at 2–3.[3] Oromo has been in and out of government custody. Doc. 8 at 2. Most recently, he was taken into custody by ICE on January 13, 2026. Id.; Doc. 22 at 5.

On January 26, 2026, Oromo filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 against Respondents. Doc. 1. Apparently unbeknownst to Oromo at the time, the Department of Homeland Security (DHS) on January 15, 2026, had filed a motion to reopen his removal proceedings to terminate his grant of withholding of removal. Doc. 23 at 5–10. An immigration judge on January 30, 2026, granted the motion to reopen removal proceedings "to determine whether [Oromo] has been convicted of a particularly serious crime that bars withholding of removal." Doc. 23 at 3.

Oromo originally asserted that he was not subject to detention under 8 U.S.C. § 1226. Doc. 1. Oromo contended that his prolonged detention under 8 U.S.C. § 1231 violated his Due Process Rights under the six-month "reasonable time" benchmark established by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678, 682 (2001), and that the government cannot show a significant likelihood of his removal in the foreseeable future. Doc. 1; Doc. 8 at 2. When Judge Schreier granted the TRO on February 6, 2026, the court record lacked information about the reopening of

---

[3] The sentences were imposed by two different Minnehaha County judges on two different days—August 25, 2021, for the first two and December 22, 2021, for the last one. Doc. 24 at 2–16. The record is unclear whether Oromo has complied with or completed the sentences or whether some or all of the time was served concurrently.

3

Oromo's case, and the TRO was limited to enjoining Respondents or any other person or entity from removing, transferring, or otherwise facilitating Oromo's removal from the Western Division of the District of South Dakota. Doc. 11 at 6.

Respondents' filings on February 10 and 11, 2026, make clear that Oromo's detention is in fact now based on 8 U.S.C. § 1226. Oromo does not contest that. Oromo concedes that the reopening of his removal proceedings means that this Court lacks authority to release Oromo from Respondent's detention. Doc. 14 at 2–3. Oromo now argues that because the court "likely will have authority to adjudicate whether [Oromo] is being lawfully held" after Oromo's removal proceedings are resolved, the action should be stayed. Id. Oromo also argues that dismissing his petition would provide Respondents with "a surefire method to manipulate federal courts" because it would allow Respondents to move to reopen removal proceedings in other cases where petitioners move to challenge their confinement. Doc. 16 at 3. Oromo's most recent filings urge renewal of the TRO because counsel's busy schedule has not allowed a meeting with Oromo in person recently and Oromo might have an immigration hearing as soon as February 26. Docs. 28, 29. Oromo argues that there is too much uncertainty in what is occurring that justifies extending the TRO. Doc. 32.

## II.    Discussion

A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain release. Preiser v. Rodriguez, 411 U.S. 475, 485 (1973). Habeas corpus relief under 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detention, Zadvydas, 533 U.S. at 687, but a court's jurisdiction to hear such claims is limited, see 8 U.S.C. § 1226(e); Demore v. Kim, 538 U.S. 510, 516–17 (2003).

Under 8 U.S.C. § 1226(a), the government may arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "Section 1226(c) mandates detention during removal proceedings for a limited class of deportable aliens—including those convicted of an aggravated felony." Demore, 538 U.S. at 517–18. One of Oromo's convictions is for aggravated assault-dangerous weapon, which may qualify as an "aggravated felony" under § 1226(c).

In his habeas petition, Oromo had argued that his detention pursuant to 8 U.S.C. § 1231[4] violates his Due Process Rights because his detention exceeds the reasonable time limit set by the Supreme Court in Zadvydas. Doc. 1. But as both parties now agree, because Oromo's removal proceedings have been reopened, see Doc. 13-1, Oromo is currently being detained under § 1226(c), not § 1231. See Doc. 14 at 2; Doc. 22 at 6; see also Nken v. Holder, 556 U.S. 418, 429 n.1 (2009) (finding that granting a motion to reopen removal proceedings "would necessarily extinguish the finality of the removal order"). Oromo is not currently subject to a final order of removal, thus making the rule in Zadvydas inapplicable to Oromo's current detention status. See Doc. 22 at 6; Doc. 14 at 2; see also Demore, 538 U.S. at 527–28 (distinguishing Zadvydas on the grounds that § 1226(c) "governs detention of deportable criminal aliens *pending their removal proceedings*"). When a habeas petitioner is transitioned from custody under § 1226(c) to § 1231 detention, the petitioner's § 1226(c) claims become moot. See, e.g., Oyelude v. Chertoff, 170 F. App'x 366, 367 n.4 (5th Cir. 2006) ("Oyelude's challenge to his § 1226 detention was mooted on June 23, 2004 when his final removal order was entered and the Attorney General's authority to

---

[4] If a final order of removal is issued against the alien, the government may continue to detain the alien pursuant to 8 U.S.C. § 1231, but the government must remove the alien within a period of 90 days after an order of removal becomes administratively final. 8 U.S.C. § 1231(a)(1); see also Zadvydas, 533 U.S. at 701 (determining that it is presumptively constitutional for the government to detain an alien for a six-month period following a final order of removal).

detain him shifted to § 1231."); Goaner W. v. Sec'y of Homeland Sec., Case No. 18-CV-1811, 2019 WL 11648600, at *3 (D. Minn. May 10, 2019) (determining that habeas petitioner's challenge to his prolonged detention under § 1226(c) was moot because his order of removal became final); Gahamanyi v. Baniecke, Civil No. 07-4007, 2008 WL 5071098, at *11 (D. Minn. Nov. 24, 2008) (finding that because habeas petitioner was "now in post-removal detention . . . any claim, insofar as it concerns his pre-removal detention, has become moot"). Likewise, Oromo's transfer from § 1231 detention to § 1226(c) pre-removal mandatory detention renders his claim for excessively prolonged detention under § 1231 and Zadvydas to be moot. See Doc. 1 at 1–2.

Oromo concedes that this Court is without authority to currently grant him habeas relief, see Doc. 14 at 2, but argues that the case should be stayed on the basis that once "the motion to reopen is resolved, Oromo may be eligible for release from custody," id. Oromo asserts that it is "likely [the court] will [then] have authority to adjudicate whether he is being held lawfully." Id. Oromo attaches news articles about recent ICE detention abuses, Doc. 14-1, and an order from District of Minnesota Chief Judge Patrick Schiltz addressing ICE officials' disregard of orders entered in the District of Minnesota concerning ICE detention and other practices, Doc. 16-1. It is an understatement that ICE's crackdown in Minnesota has included behavior and practices that appear to be unconstitutional and violative of federal court orders and law enforcement norms. But Oromo's situation and case have no true connection to what has happened in Minnesota.

There may be circumstances where a stay rather than dismissal of an action like this one is appropriate, but not here. DHS filed its motion to reopen removal proceedings in Oromo's case on January 15, 2026, nine days before Oromo filed his habeas action in this Court. The motion to reopen was not DHS eluding this Court's jurisdiction or gaming the system to improperly prolong

Oromo's detention.  See Demore, 538 U.S. at 532–33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.").  Indeed, Oromo has been detained by ICE most recently only since January 13, 2026. Doc. 8 at 2; Doc. 22 at 5.  The length of his most recent detention is well below the six-month period the Supreme Court determined was reasonable for a habeas petitioner detained under § 1226(c).  Demore, 538 U.S. at 527–31 (determining that habeas petitioner's six-month detention under § 1226(c) was constitutional).  Because this Court cannot grant Oromo habeas relief at this stage of his immigration proceedings and Respondents did not reopen removal proceedings as a ploy to extend improper detention, dismissal rather than a stay is proper.

Respondents sought for this Court to vacate the prior TRO.  Under Fed. R. Civ. P. 65(b)(2), a TRO extends for a time not to exceed fourteen days.  Judge Schreier entered the TRO on February 6, 2026, meaning it extends only through February 20, 2026, today's date, when this case is being dismissed.  The request to extinguish the TRO is moot.

## III.    Conclusion

Based on the foregoing, it is

ORDERED that Oromo's second motion for a TRO and to stay the case, Doc. 12, and Motion to Extend TRO until March 6, 2026, Doc. 27, are denied.  It is further

ORDERED that Respondents' request to vacate the TRO is denied as moot.  It is finally

ORDERED that Oromo's petition for a writ of habeas corpus, Doc. 1, is dismissed without prejudice.

DATED this 20th day of February, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE